IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, )<br>)<br>) | |
| Petitioner, )<br>) | Case No. 2:11-mc-00121 TFM |
| v. )<br>) | |
| UPMC, )<br>) | |
| Respondent. )<br>) | |

### REPLY BRIEF OF EEOC IN SUPPORT OF APPLICATION FOR ORDER TO SHOW CAUSE WHY THE COMMISSION'S ADMINISTRATIVE SUBPOENA SHOULD NOT BE ENFORCED

Petitioner, Equal Employment Opportunity Commission ("EEOC" or "Commission"), submits the following Reply Brief in Support of its Application for an Order to Show Cause Why the Commission's Administrative Subpoena Should Not Be Enforced.

Respectfully submitted,

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

DEBRA M. LAWRENCE
Regional Attorney
Philadelphia District Office

RONALD L. PHILLIPS
Supervisory Trial Attorney
EEOC-Baltimore Field Office

*/s/ Deborah A. Kane*
Trial Attorney
EEOC, Pittsburgh Area Office
1000 Liberty Avenue, Suite 1112
Pittsburgh, PA 15222
412-395-5866
deborah.kane@eeoc.gov

## ARGUMENT

**A.   Respondent Has Waived Any Objections Not Initially Made In Its Petition To Revoke.**

In its response to EEOC's application, Respondent raises objections that were never raised in its Petition to Revoke or Modify Subpoena. Pursuant to 29 U.S.C. § 161[1] and 29 C.F.R. § 1601.16(b)(1), a recipient of an EEOC subpoena who does not intend to comply must petition the EEOC to revoke or modify the subpoena within five days of service of the subpoena. "A party's failure to attempt this administrative appeal procedure prevents the party from challenging the subpoena, except on constitutional grounds." *EEOC v. County of Hennepin*, 623 F. Supp. 29, 31-32 (D. Minn. 1985). *Accord EEOC v. Cuzzens of Georgia, Inc.*, 608 F.2d 1062, 1063-64 (5th Cir. 1979); *EEOC v. City of Milwaukee*, 919 F. Supp. 1247, 1255 (E.D. Wis. 1996); *see also EEOC v. Lutheran Soc. Servs.*, 186 F.3d 959, 964 (D.C. Cir. 1999) ("section 1601.16(b)(1)'s mandatory language creates a strong presumption that issues parties fail to present to the agency will not be heard in court").

Respondent has now objected, for the first time, that the charge was untimely filed and that the description of information requested in the subpoena is vague. However, in its Petition to Revoke or Modify Subpoena,[2] Respondent did not object to the subpoena on these grounds. As a result, those objections have been waived, and the Court should not consider them.

**B.   The Charge Was Timely Filed.**

Respondent contends that the charge of discrimination is untimely. Respondent is incorrect, as Ms. Gailey's Intake Questionnaire – filed months before she signed her formalized charge form – is itself a charge. A filing with the Commission is to be deemed a charge if it can be reasonably construed as a "request for the agency to take some remedial action to protect the

---

[1] This section is incorporated into Title VII by 42 U.S.C. § 2000e-9.
[2] A copy of the Petition to Revoke is attached to the Declaration of Susan Kelly, as Exhibit 6.

1

employee's rights or otherwise settle a dispute between the employer and the employee." *Federal Express v. Holowecki*, 552 U.S. 389, 402 (2008). "[T]he filing must be examined from the standpoint of an objective observer to determine whether, by a reasonable construction of its terms, the filer requests the agency to activate its machinery and remedial processes." *Id.* The filing should also contain minimal information sufficient to adequately identify the parties and to describe generally the action or practices complained of. *See* 29 C.F.R. part 1601.12(b).

Here, Ms. Gailey filed an Intake Questionnaire which was received by the Pittsburgh Area Office on April 23, 2009, less than 300 days from the date she learned of her termination. *See* Declaration of Susan Kelly, Exhibit 7. The Intake Questionnaire contains sufficient information identifying the parties, as well as the grounds for the charge.

Furthermore, on the last page, Ms. Gailey checked the box that states "I want to file a charge of discrimination . . . ." Kelly Dec., Exhibit 7 at p. 4 (emphasis omitted). Post-*Holowecki*, the federal courts have consistently held that the quoted language in the Questionnaire box checked by Ms. Gailey is to be reasonably construed as a request for remedial action by the Commission sufficient for the Questionnaire to be considered a charge. *See, e.g., Muthukumar v. Univ. of Texas at Dallas*, Civil Action No. 3:10-CV-0115-B, 2010 WL 5287530 at *3 (N.D. Tex., Dec. 27, 2010) (quoted language from the form is a charge); *Hawthorn v. Vatterott Educ. Centers, Inc.*, No. 09-CV-442-TCK-PJC, 2010 WL 3258560, at *4 (N.D. Okla., Aug. 17, 2010 (same); *see also Kellam v. Independence Charter School*, 735 F. Supp. 2d 248, 252-54 (E.D. Pa. 2010) (holding intake questionnaire *without* the checked language was sufficient); *Palmer v. Southwest Airlines, Co.*, No. 08 C 6158, 2009 WL 3462043, at *6-8 (N.D. Ill., Oct. 28, 2009) (holding similar but less explicit questionnaire language constitutes a charge);

2

*Cargo v. Kansas City Southern*, Civ. Action No. 05-2010, 2009 WL 3010830, at *3 (W.D. La., Sept. 16, 2009) (same).

### C. The Subpoena is Reasonably Related to the Issues Raised By The Charge and Also Relevant to Issues Uncovered In the Scope of EEOC's Investigation.

Respondent wrongly contends that the subpoena is vague. The subpoena quite clearly requests information about employees who were terminated pursuant to Respondent's express, written policy that required employees to return from a medical leave after a set period of time.

Respondent also claims that the information requested is not relevant to the charge filed by Ms. Gailey, and mischaracterizes the scope and purpose of EEOC's investigation. EEOC is not investigating in order to establish that an indefinite leave of absence is a reasonable accommodation under the ADA. Rather, the purpose of the investigation is to determine if there are any employees who were denied medical leave in excess of Respondent's maximum policy limit where such leave would have been an accommodation and would not have been an undue hardship as defined by the ADA. *See e.g., US Airways, Inc. v. Barnett*, 535 U.S. 391, 397 (2002) (employer has a duty under the ADA to make exceptions to established policies where necessary if doing so would not present an undue hardship); *Harper v. Honda of America Mfg., Inc.*, No. C-2-97-0338, 1998 WL 1788072, at *4-7 (S.D. Ohio, Nov. 13, 1998) (viable ADA claim regarding one-year maximum medical leave policy).

In addition, the material sought is clearly relevant and within the scope of EEOC's statutory authority. Ms. Gailey's charge indicates that the maximum leave policy was applied to her without consideration of whether additional leave may have been a reasonable accommodation, and therefore an investigation into whether the respondent applied the same policy to other employees is relevant to the issues in the charge. EEOC is empowered to seek information that might "cast light" on the allegations against the employer. Here, Ms. Gailey has

3

alleged that she was terminated because she did not return from a medical leave of absence. Even though the charge did not contain the magic words "reasonable accommodation," it is sufficient to enable EEOC to reach the question of whether Respondent's policies, *which were produced to EEOC by Respondent with its position statement as justification for Ms. Gailey's termination*,[3] violated the ADA. Recognizing that lay persons are generally unfamiliar with the law, the Third Circuit has consistently held that they are not required to assert legal theories in their charges and that those charge documents should be liberally construed. *E.g., EEOC v. Kronos, Inc.*, 620 F.3d 287, 297, 300 (3rd Cir. 2010).

Moreover, the Third Circuit has also squarely held that EEOC "is not required to ignore facts that support additional claims of discrimination if it uncovers such evidence during the course of a reasonable investigation of the charge. Rather, the EEOC has the power to investigate a broader picture of discrimination which unfolds in the course of a reasonable investigation of a specific charge." *Id.* at 297. (internal citations and quotations omitted). Courts generally will defer to the Commission's appraisal of what is relevant "so long as it is not obviously wrong." *EEOC v. Guess?, Inc.*, 176 F. Supp. 2d 416, 421 (E.D. Pa. 2001). Faced with a charging party complaining of discriminatory discharge who, it is undisputed, was terminated under Respondent's medical leave policy, and presented by Respondent with that leave policy, a policy that is generally applicable to all employees, caps medical lave, and makes no provision for additional leave as an accommodation, the Commission's decision that the policy warrants further inquiry is not obviously wrong.

**D.     Respondent Has Not Established Undue Burden**.

Respondent contends that it would be unduly burdensome for it to respond to the subpoena. A subpoena will pose such a burden if "compliance would threaten the normal

---

[3] See Respondent's Exhibit A (Docket No. 7-1) at p. 2.

operation of a respondent's business," *EEOC v. Quad/Graphics, Inc.*, 63 F.3d 642, 645 (7th Cir. 1995) (quoting *EEOC v. Bay Shipbuilding Corp.*, 668 F.2d 304, 313 (7th Cir. 1981)), or "unduly disrupt and seriously hinder normal operations of the business." *EEOC v. Citicorp Diners Club, Inc.*, 985 F.2d 1036, 1040 (10th Cir. 1993).

Respondent contends, through the declarations of two of its employees, that it may take time to comb through its files in order to comply with the subpoena because its records are maintained in several computer systems or in paper form. Respondent offers no information about the cost to search its records, and offers nothing more than an estimate that some employees in its 20 business units may be required to spend a few days gathering paper records. *See* Declaration of Jane Clayton (Docket No. 7-2) at ¶15-16.[4] Respondent employs over 50,000 people. Kelly Dec., Exhibit 6 at ¶11. Consequently, Respondent does not claim to lack the personnel to gather the material at issue. Ms. Clayton indicates in her declaration that she had already performed a preliminary search that located approximately 1,000 employees who may have been affected by Respondent's policies, significantly refining the search for responsive information. Furthermore, according to its own website, Respondent's operating revenues grew to **$4.2 billion** in the first six months of 2011. *See* Kelly Dec., Exhibit 8. Respondent's assertion that searching for the records requested would threaten Respondent's normal operations is unsupported by evidence and strains credulity.

A summary assertion that collecting and producing information in response to a subpoena would be difficult and time-consuming is insufficient to excuse compliance. *See e.g., EEOC v. United Air Lines, Inc.*, 287 F.3d 643, 653 (7th Cir. 2002); *Citicorp Diners*, 985 F.2d at 1040 (rejecting respondent's burden argument where respondent submitted evidence that compliance

---

[4] Respondent also provided a declaration from Linda Croushore, which provides no specific information on the amount of time or effort that would be required to comply with the subpoena.

5

with the subpoena would take two full-time employees six months, but did not offer any estimate of cost or show how compliance would impact its normal operations). At best, all Respondent can show is that compliance with the subpoena will involve some inconvenience and some cost. This is insufficient. *See e.g., EEOC v. University of Pittsburgh*, 487 F. Supp. 1071, 1077 (W.D. Pa. 1980) ("[P]roduction of evidence imposes some burden, . . . so long as the information is relevant and material, the cost is 'part of the social burden' of our present day society . . . .").

Finally, Respondent contends that the "marginal relevance" of the materials requested by the Commission is outweighed by the burden of compliance. Respondent mistakes the standard for establishing undue burden under EEOC's ADA investigative authority – unlike the Federal Rules of Civil Procedure, the standard does not involve a balancing test. Either the material is relevant to a lawful Commission investigation or it is not. Either production of the material would seriously disrupt normal business operations or it does not, and if it does, this does not justify a complete denial of all document production. Furthermore, Respondent's objection merely second-guesses the EEOC's judgment about the conduct of the investigation and is no defense to enforcement of the subpoena. "[A]n alleged perpetrator of discrimination cannot be allowed to pick and choose the evidence which may be necessary for an agency investigation." *EEOC v. University of Pennsylvania*, 493 U.S. 182, 193 (1990) (*quoting EEOC v. Franklin & Marshall Coll.*, 775 F.2d 110, 116 (3rd Cir. 1985)). Thus, this argument should be rejected.

## **CONCLUSION**

For the foregoing reasons, as well as those set forth in EEOC's application and memorandum in support, Respondent's objections to the administrative subpoena should be rejected, and the subpoena should be enforced as written.

Respectfully submitted,

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION

DEBRA M. LAWRENCE
Regional Attorney
Philadelphia District Office

RONALD L. PHILLIPS
Supervisory Trial Attorney
EEOC-Baltimore Field Office

*/s/ Deborah A. Kane*
Trial Attorney
EEOC, Pittsburgh Area Office
1000 Liberty Avenue, Suite 1112
Pittsburgh, PA 15222
412-395-5866
deborah.kane@eeoc.gov