IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, <br><br> Petitioner, <br><br> v <br><br> UPMC, <br><br> Respondent. | ) <br> ) <br> ) <br> ) 2:11-mc-121 <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

**MEMORANDUM ORDER**

Pending before the Court is an APPLICATION FOR AN ORDER TO SHOW CAUSE WHY EQUAL EMPLOYMENT OPPORTUNITY COMMISSION'S ADMINISTRATIVE SUBPOENA SHOULD NOT BE ENFORCED (Document No. 1). The EEOC has filed a brief in support of the motion, UPMC has filed a response in opposition, and EEOC has filed a reply brief. In addition, both parties have submitted numerous exhibits. On May 18, 2011, the Court heard oral argument from counsel for both parties. The matter is ripe for disposition.

Factual and Procedural Background

Carol Gailey was hired as a Certified Nursing Assistant at "UPMC-Heritage Shadyside"[1] in March 2007. Gailey has numerous health problems, including heart disease, diabetes, cancer, angina, shortness of breath and severe depression. Gailey notified her employer on November 7, 2007 that she suffered from certain health conditions that would require her to miss an unspecified period of work. At the time, Gailey was not eligible for Family Medical Leave

---

[1] The correct name of Gailey's employer is "The Heritage Shadyside," which is a wholly-owned subsidiary of UPMC Senior Communities, Inc., which in turn is a wholly-owned subsidiary of UPMC. UPMC Heritage Place employs 170 people, while UPMC employs over 48,000 people. Both the Questionnaire and the Charge of Discrimination filed with the EEOC named "UPMC – Heritage Shadyside" as the Respondent.

1

because she had not worked at the nursing home for twelve months or accrued 1,250 hours. Nevertheless, Gailey was provided with a Personal Leave of Absence ("PLOA") and short-term disability benefits in accordance with UPMC policies. Gailey was on PLOA leave from November 4-17, 2007; November 23-December 10, 2007; and December 13, 2007- January 28, 2008.

On February 5, 2008, Gailey returned to work pursuant to UPMC's RTW program in a temporary, alternative position. Gailey did not perform her regular duties as a Certified Nurse Assistant, but rather, performed sedentary tasks such as inventory and ordering supplies for approximately 30 hours per week. During this time, Gailey continued to receive short-term disability benefits to supplement her reduced earnings. Gailey's 26-week entitlement to short-term disability benefits expired on May 3, 2008. However, Gailey continued to work under the RTW program. On May 4, 2008, Gailey applied for long-term disability benefits, but was deemed ineligible at that time due to her ability to work.[2]

On May 28, 2008, Gailey applied for, and was granted, another PLOA, so that she could undergo cancer surgery. According to Respondent, at the time of this application Gailey indicated that she would return to work on June 21, 2008. Gailey exhausted her entitlement to PLOA leave (fourteen (14) weeks per year) on June 21, 2008. Gailey failed to report to work and failed to contact her employer. In accordance with its policy, Respondent treated her failure to report to work as a voluntary resignation and terminated her employment effective June 22, 2008. On July 11, 2008, Gailey contacted Respondent concerning her ability to return to work and was advised that her employment had been terminated.

---

[2] Upon review of Gailey's May 28, 2008 application for leave, she was approved for long-term disability benefits.

2

Gailey filed a Charge of Discrimination with the EEOC on June 17, 2009.[3] In the Charge, Gailey alleged that she "had been discharged because [she] did not return back to work on time from short-term disability." Gailey further alleged that she was given no warning that her employment would be terminated if she did not report to work.

On August 26, 2009, UPMC Heritage Place filed a Position Statement with the EEOC which denied Gailey's allegations and provided further details regarding her employment and termination. Attached to the Position Statement were copies of several UPMC policies. Policy HS-SR0705 addresses a "Harassment-free Workplace." Policy HS-SR0719 (the "PLOA Policy") covers a "Personal Leave of Absence (PLOA)." Policy HS-SR0722 (the "Disability Policy") is entitled "DISABILITY Income Protection (Short Term – STD, Long Term – LTD, and Salary Continuation)." It is UPMC's position that Gailey was terminated in accordance with the terms of the PLOA Policy, not the Disability Policy.

In April 2010, the EEOC sent a request for information ("RFI") to UPMC (not The Heritage Shadyside), which requested the identities of employees at "all facilities in the Pittsburgh region" who had been terminated in accordance with the PLOA and/or Disability Policies. In August 2010, UPMC objected to the scope of the RFI and refused to provide the requested information. On September 2, 2010 Subpoena No. TPI-881 (the "Subpoena") was served on UPMC pursuant to Section 710 of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-9, as incorporated by Section 107(a) of the Americans with Disabilities Act, 42 U.S.C. §12117(a), purportedly in support of the EEOC's investigation of

---

[3] On its face, Gailey's Charge of Discrimination is clearly untimely. More than 300 days expired between the date Gailey learned of the alleged discrimination (July 11, 2008) and the date she filed her Charge of Discrimination (June 17, 2009). However, on the day prior to the oral argument, EEOC produced an Intake Questionnaire which was apparently completed by Gailey on April 23, 2009, within the 300-day window. On the last page of the Questionnaire, Gailey indicated her intention to file a charge of discrimination. EEOC contends that the Questionnaire should be construed as a timely "charge."

3

Charge No. 533-2009-01155 filed by Carol Gailey. On September 7, 2010, UPMC filed a Petition to Revoke or Modify Subpoena. Five months later, on February 18, 2011, the EEOC denied the Petition. This litigation followed on April 21, 2011.

The EEOC Subpoena seeks information "for the period July 1, 2008 to the present time." Notably, it is undisputed that Gailey was terminated on June 22, 2008, such that the time period identified in the Subpoena does not overlap with Gailey's employment. The Subpoena seeks ten categories of information about "all employees who were terminated after 14 weeks of a medical leave of absence pursuant to Respondent's Personal Leave of Absence Policy and/or Disability Income Protection Policy, and/or any other applicable policy." The Subpoena is addressed to the entire corporate entity - UPMC, not Gailey's employer The Heritage Shadyside nursing home.

During the oral argument, counsel for EEOC was asked to describe the efforts that had been undertaken to obtain information that relates specifically to Gailey's claim. Counsel did not identify any such efforts, but instead, referenced the Position Statement, noted that the investigator had spoken with Gailey, and stated that "we want to get this information [in response to the Subpoena] and then we can determine what other information we need."

Legal Analysis

The general principles which govern the EEOC's authority to enforce a subpoena were summarized by the United States Court of Appeals for the Third Circuit in *E.E.O.C. v. Kronos Inc.*, 620 F.3d 287 (3d Cir. 2010):

> The EEOC is empowered to investigate charges of discrimination to determine whether there is reasonable cause to believe that an employer has engaged in an unlawful employment practice. *See* 42 U.S.C. §§ 2000e-5(b), 12117(a) (expanding the EEOC's power to investigate and address discrimination on the basis of disability). In connection with its investigation, the EEOC may issue administrative subpoenas. *See id*. § 2000e-9; 29 U.S.C. § 161(1). However, the

> EEOC's statutory investigative authority is not plenary; the EEOC is entitled to access only evidence "relevant to the charge under investigation." 42 U.S.C. § 2000e-8(a).

*Id*. at 296.[4] The relevance test is not onerous and EEOC may obtain access to any material that "might cast light" on the allegations against the employer. *Id*. The EEOC is not required to ignore facts that may support additional claims of discrimination if it uncovers such facts "during the course of a reasonable investigation of the charge." *Id*. at 297. In *Kronos*, the Court of Appeals reversed the district court's decision to limit the scope of the subpoena at issue.

On the other hand, the EEOC's authority is limited by statute, and the courts are required to enforce those limitations. As the *Kronos* Court explained:

> Nonetheless, the EEOC's power of investigation is anchored to the charge of discrimination, and courts must be careful not to construe the charge and relevance requirements so broadly as to confer "unconstrained investigative authority" upon the EEOC. The relevance requirement is designed to cabin the EEOC's authority and prevent fishing expeditions.

*Id*. (citations omitted). In *EEOC v. United Air Lines, Inc*., 287 F.3d 643, 653 (7th Cir. 2002), the Court reasoned that the "might cast light" standard requires EEOC to demonstrate "a realistic expectation rather than an idle hope" that materials relevant to the charge under investigation will be obtained.

The EEOC bears the burden to demonstrate relevance. *Kronos*, 620 F.3d at 297. The Third Circuit has set forth a five-part test. "To obtain enforcement of an administrative subpoena, an agency must demonstrate that 1) its investigation has a legitimate purpose, 2) the inquiry is relevant to that purpose, 3) the agency does not already possess the information

---

[4] "In addition to investigating charges of discrimination filed by or on behalf of an individual, the EEOC has the authority to file and investigate a commissioner's charge alleging unlawful employment practices, pursuant to 42 U.S.C. §§ 2000e-5(b) and 2000e-6(e)." *Id*. at 296 n. 3. No such "commissioner's charge" has been filed in this case.

5

requested, 4) the agency has complied with relevant administrative requirements, and 5) the demand is not " 'unreasonably broad or burdensome.'" *Id.* at 296 n. 4 (citations omitted).

UPMC has raised several challenges to the enforceability of the Subpoena. First, it contends that Gailey's underlying charge is untimely on its face. Second, UPMC contends that the Subpoena is unduly vague. Third, UPMC argues that the Subpoena seeks information that is not relevant to the underlying charge. And finally, UPMC argues that compliance with the Subpoena would be unduly burdensome. The Court concludes that the Subpoena constitutes an improper "fishing expedition" that seeks information that is not relevant to the underlying charge. Accordingly, the Court need not resolve the ultimate merit of UPMC's remaining contentions.

It is readily apparent that EEOC is interested in pursuing an investigation of UPMC's corporate policies. Upon receipt of the UPMC policies, the EEOC immediately turned the focus of its investigation away from the specifics of the Gailey Charge and toward a much larger, corporate-wide issue. *See* April 14, 2011 Declaration of Investigator Susan Kelly (EEOC was concerned about whether the leave polices violated the ADA and was "looking for information about other worksites than the one where Ms. Gailey had worked.") EEOC's reply brief forthrightly explains: "the purpose of the investigation is to determine if there are any employees who were denied medical leave in excess of Respondent's maximum policy limit where such leave would have been an accommodation and would not have been an undue hardship as defined by the ADA." *Accord* EEOC Brief at 6-7 (EEOC discovered evidence of a policy that on its face appears to bar an entire class of reasonable accommodations and expanded its investigation). Nevertheless, there is no "commissioner's charge" regarding these UPMC corporate policies and the Subpoena at issue cannot be justified by Gailey's charge.

6

The investigation of UPMC corporate policies does not appear to have occurred "during the course of a reasonable investigation" of Gailey's Charge, as required by *Kronos*. To the contrary, EEOC's effort to obtain the identities of persons discharged under UPMC-wide policies was the first – and to date, only – step of its investigation. In the two years since Gailey filed her Charge, the EEOC has done almost nothing to determine the specific facts of her discharge. It remains unclear whether or not Gailey promised her employer that she would return to work on June 21, 2008. Nor have the effects of Gailey's qualification for long-term disability benefits, her exhaustion of PLOA leave, and her participation in the RTW program been explored. It appears, on this record, that Gailey never requested an accommodation and that she could not have performed the essential job functions of the Certified Nursing Assistant position even with a reasonable accommodation. These types of narrowly-tailored, potentially-dispositive inquiries should have been pursued prior to launching an inquiry into a tangential alleged systemic violation.

Moreover, EEOC has failed to satisfactorily explain how the information requested in the Subpoena would "cast light" on Gailey's claim. The Subpoena does not even cover the time period of Gailey's employment. As noted above, there are numerous factual circumstances that are unique to Gailey, such that the facts surrounding another person's termination would be of limited benefit to her claim. The EEOC is in possession of UPMC's policies and is able to contend that they facially violate the ADA without the "personal identity" information being sought in the Subpoena.

In sum, the Court concludes that the Subpoena at issue constitutes a "fishing expedition" to discover the existence of other potential claimants rather than a reasonable effort to develop information that is relevant to Gailey's charge of discrimination.

7

In accordance with the foregoing, the APPLICATION FOR AN ORDER TO SHOW CAUSE WHY EQUAL EMPLOYMENT OPPORTUNITY COMMISSION'S ADMINISTRATIVE SUBPOENA SHOULD NOT BE ENFORCED (Document No. 1) is **DENIED**. The Subpoena exceeds the investigative authority of the EEOC under the facts and circumstances of this case. The clerk shall docket this case closed.

SO ORDERED this 24th day of May, 2011.

BY THE COURT:

s/Terrence F. McVerry
United States District Judge

cc: **Deborah A. Kane, Esquire**
United States Equal Employment Opportunity Commission
Email: DEBORAH.KANE@EEOC.GOV

**John J. Myers, Esquire**
Email: jmyers@eckertseamans.com

**Rebecca L. Magyar, Esquire**
Email: rmagyar@eckertseamans.com